## OMBONY and DAIN *vs.* JONES.

Where a sub-tenant erects a building upon the demised premises, which he claims the right to remove when his tenancy shall cease, he is to be considered the *owner* of the building, within the meaning of the first section of the mechanics' lien law, and proceedings may be instituted against him, under that act, by persons furnishing materials.

The act does not require that the defendant in the proceedings under it shall necessarily be the absolute owner of the soil. If he may be considered as the general owner of the building, that is sufficient. The lien extends to his interest in the building, and in the land if he has any.

Where B. erected a building upon land occupied by him as a sub-tenant, with the assent of the landlord, at his own expense, for his own use, and with the declared intent of removing it, when his occupancy of the land should terminate, and although the foundation was to some extent imbedded in the earth, yet the building was not in any manner fastened to it, nor to another building adjoining it, and it could be removed without doing any damage to the soil, or to the other erection upon it; *it was held* that the building was the property of B. to the extent required by the statute, with the right to remove it away when his tenancy expired.

In a lease from J. to H. there was a covenant by the lessee to leave on the premises, at the end of his term, all trees, shrubbery, *buildings* &c. In a lease subsequently executed by J. to W. the lessor agreed to lease and rent the demised premises, with all the *privileges* belonging thereto, "as enjoyed by H." *Held* that the reference to the former lease to H. was for the purpose of defining the *privileges* intended to be conferred by the new lease, and did not relate to the performance of covenants by the lessee; and that consequently the clause did not operate to prevent W. or a sub-tenant claiming under him, from removing a building erected by him upon the demised premises.

The objection, to proceedings instituted to enforce a lien under the mechanics' lien law, that the specification required by the second section of that act was not served upon the alleged owner within the requisite period, although it may be a good defense for the owner, if he thinks proper to interpose it, cannot, so far as it relates to his interest, or the rights of those claiming under or through him, be raised by any other persons, excepting those acquiring rights before the commencement of the proceedings to enforce the lien.

APPEAL by the defendant from a judgment entered at a special term, on the verdict of a jury. The action was brought to recover the value of a wooden frame building, erected by one Ward Barmore upon the defendant's premises, while said Barmore occupied the same as tenant of one Winant, a lessee of the defendant, under a written agreement. The plain-

Ombony v. Jones.

tiffs claimed title to the building under a judgment rendered June 25, 1853, in proceedings instituted in pursuance of the provisions of the mechanics' lien law, passed in 1852, for lumber and materials furnished between October 6, 1852, and December 29, 1852, which were used in the construction of said building. These proceedings were commenced by service of the notices required by law, on the 17th day of May, 1853. The premises were sold under an execution issued upon said judgment, and the plaintiffs derived title through the purchasers at such sale. The sale took place August 13, 1853. The building, in connection with Barmore's interest in the land, was advertised for six weeks before the sale. Barmore while in possession, on the 10th of August, 1853, released to the defendant his interest in the land on which such building stood, together with a space of ten yards on three sides thereof. The defendant also, on the 19th of August, 1853, took from Barmore, as tenant at will of the Mohegan lake house and premises, an agreement to surrender possession of said premises whenever required to do so. Winant (the lessee) by an instrument in writing, dated August 27, 1853, surrendered to the defendant his lease of said premises, he (said Winant) having a chattel mortgage upon this building, dated February 1st, 1853, but no reference is made, in the surrender of said lease, to said building or to said chattel mortgage. After the plaintiffs had rested their case at the circuit, the defendant offered in evidence several written instruments, and thereupon moved for a nonsuit upon the grounds, 1. That the plaintiffs had not proved any valid title to the building in question, the lien law not being applicable to this case, and Barmore, the defendant therein, not being the owner of the building, but only tenant at will, and having surrendered before any attempt to remove the building. 2. That Jones, the defendant here, was not a party to the lien proceedings, though the general owner, and had no opportunity of being heard as to his rights. 3. That the lien law did not allow of the removal of the building, and that it is a part of the real estate of the defendant Jones, and the law applies only to the case of a person furnishing materials to a contractor

with the owner. 4. By the terms of the lease of Jones to Hall, of February, 1851, and the lease of Jones to Winant, of October 23d, 1851, under which Barmore occupied the premises, all buildings put upon the premises by the tenants were to remain on the premises, and be the property of the defendant Jones. The motion for a nonsuit was denied, to which decision the defendant excepted. The jury found a verdict for the plaintiffs for $600.

*E. Wells* for the appellant. I. The judgment obtained by the plaintiffs against Barmore, under the lien law of 1852, was unauthorized by the act and was void. (1.) The defendant did not appear, and the plaintiffs were therefore bound to proceed regularly. (2.) The act gives a lien only where plaintiffs have furnished materials to a contractor who has taken a contract to build for the owners. (*Laws of* 1852, *p.* 611, *ch.* 384, §§ 1, 2, 5.) This is confirmed by the act of April 17, 1854, which gives a lien to persons situated as these plaintiffs were. (*Laws of* 1854, *p.* 1086, §1.) Hence as the proceedings to bring the lien to a close are authorized only where the plaintiff had a lien under section 1, these proceedings were entirely unauthorized and void. (*Per Harris, J., Dressel* v. *French,* 7 *Prac. Rep.* 352. *Doughty* v. *Devlin,* 1 *Smith's N. Y. Com. Pl. Rep.* 625, 633.) (3.) Where a lien is given, it subjects the right, title and interest of the owner thereto, and of course requires that he should be made a party to the proceedings. Even if the house was removable by Barmore during his possession, Jones was the owner, subject to that right, and yet the plaintiffs seek to take away his right without giving him a hearing. (*Laws of* 1852, *p.* 612, § 1. 10 *Bac. Ab.* 432, *Am. ed.* 1842.) (4.) The specification mentioned in section 2, of the act of 1852, was not served in twenty days after the materials were furnished. The last materials were furnished December 29, 1852, and the notice to appear was not served till May 17, 1853; hence by section 2 of the act, the plaintiffs got no lien upon the property. (*Freeman* v. *Cram,* 3 *Comst.* 305.)

II. The plaintiffs cannot avail themselves of the proceedings

Ombony v. Jones.

under the lien law, as a valid judgment independent of that act. It purports on its face to be a special proceeding under that act, and has none of the properties of an action, as defined by the code, § 127 ; §§ 2, 3 ; § 245. (1.) The court got no jurisdiction of the case, as no process was served within the meaning of the code, and the defendant Barmore did not appear, and the judgment is therefore void. Such a judgment may be impeached by a third person to whom it is prejudicial, by plea and proof. (*Downs* v. *Fuller*, 2 *Metc*. 135.) Though there was jurisdiction, yet if there was error, we may avoid the judgment in this action, for we could not have appealed in that action. (*Warter* v. *Perry*, *Cro. Eliz*. 199. *Randall's case*, 3 *Mod. Rep*. 308. *Com. Dig. Error*, D. 5 *Dane's Abr*. 225. 2 *Metc. Rep*. 138.) (2.) Had Jones been made a party to the lien suit, he could have defended it successfully, as the act does not apply to such a case. And he is now entitled to show any defence which would have availed him if he had been made a defendant with Barmore. (*Griswold* v. *Stewart*, 4 *Cowen*, 458, 459.) (3.) The judgment in the lien proceedings purports to be both against the person of Barmore and against the building and lot; whereas the act gives power to the court, to adjudge against the property only. (*Laws of* 1852, *p*. 614, § 8.)

III. The building in question, when erected, became a part of the freehold, and belonged to Jones, the landlord, and neither the tenant nor his creditors had any right to remove it. (1.) It never was a personal chattel, but was a large durable building, 60 by 30 feet, built on a stone foundation sunk two feet in the ground ; the ground was graded off and dug away to the depth of one to two feet, the kitchen attached to the Mohegan House was cut away and removed to make room for it ; a doorway was cut through the south side of the main building, communicating with the new building, and making in fact one messuage ; and a new picket fence was torn away to make room for it. (2.) The building was not erected for any purpose of trade or manufacture, nor for agricultural uses, but solely as a part of the dwelling house, and for the convenience or pleasure of the inmates. (3.) The lease to Winant, under which Barmore occupied as a

tenant at will, by reference to a former lease to S. Hall, expressly stipulates that all buildings put on the premises shall remain there, and belong to the landlord Jones. In this respect this case differs entirely from *Dubois* v. *Kelly*, (10 *Barb.* 496,) which turned entirely on the landlord's license to remove, and all that Harris, J. says about the tenant's general right to remove fixtures is obiter, and out of the case. (4.) The building cannot be removed without leaving the premises in a much worse condition than when Barmore took possession, as will be apparent by reference to the changes made when it was erected. The mere facility of removal without injury to the freehold in the act of removal, is not the criterion. But it is, was it erected in such a manner that its removal will leave the premises in substantially the same condition as before the erection? (*Washburn* v. *Sproat*, 16 *Mass. R.* 449.) The case of *King* v. *Wilcomb*, (7 *Barb.* 266,) was a case of a nursery of trees claimed by a purchaser under a mortgage sale ; the facts do not apply to this case, and the general rule there laid down by Harris, J. as to tenants' right to remove fixtures, is qualified as above, in the cases there cited, showing that such right of removal exists only where it would not leave the inheritance in a worse condition than when the tenants took possession. In *Dubois* v. *Kelly*, (10 *Barb.* 511,) Harris, J. again affirms the qualification in the same language—" The inheritance must be left in as valuable a condition, to the owner, as it would have been if the building had never been erected." That the rule has this qualification is also shown by the following cases : *Whiting* v. *Brastow*, (4 *Pick.* 301.) *Taylor* v. *Townshend*, (8 *Mass. R.* 411.) *Washburn* v. *Sproat*, (16 *id.* 449.) *Pemberton* v. *King*, (2 *Devereux*, 376.) Even if the building is used for the purposes of trade, still if the tenant expressly covenants to deliver up all buildings erected during the term, he cannot remove them. (10 *Bac. Ab.* 433, *Am. ed.* 1842. *Naylor* v. *Naylor*, 1 *Taunt.* 19. 2 *Barn & Cres.* 608.)

IV. Even if the house was of right removable, that right not being exercised, nor attempted to be, during the continuance of Barmore's or of Winant's term, ceased when Jones took pos-

session. (*Stackwell* v. *Marks*, 5 *Shep.* 455. 10 *Bac. Ab.* 432, *Am. ed.* 1842.) Barmore surrendered the possession of the ball-room premises August 10th, 1853. Winant surrendered his lease August 22, 1853, and the plaintiffs did not attempt to remove the building till September 26th, about six weeks after the sale, at which time the defendant Jones was in quiet possession of the ball-room and had the key of it, in pursuance of the agreement with Barmore, dated August 19, 1853.

V. Barmore being only a tenant at will of the premises and ball-room, had no interest which could be levied on and sold, and the plaintiffs got no title under the sale; and it being sold under their judgment, they are chargeable with notice of the extent of the tenant's right from whom they claim. As Winant's lease contained a proviso that he might purchase the premises for $1500, and as Jones had expressly informed Barmore before the ball-room was erected that he (Barmore) would not have a right to remove it, it was probably erected under some arrangement between Barmore and Winant, that Winant was to have the benefit of it, especially as Barmore testifies that he got permission from Winant to build it. And that Barmore was not to remove it, appears from his mortgaging it to Winant, Feb. 1, 1853, to secure the payment of $400 due him.

VI. If the house ever could be considered as personal property, then the defendant has an older and better title to it than the plaintiff, under the mortgage executed by Barmore to Winant, February 1, 1854, to secure $400 due him. Barmore testifies that the mortgage had not been paid. Winant surrendered and transferred all his interest to Jones, August 22, 1853, and Jones took possession before the plaintiffs bought of Clapp & Ingersoll, and was in possession when the plaintiffs attempted to move the building; this surrender operated to transfer all Winant's interest under the mortgage of February 1, 1853, as well as under the lease to Jones; and he having taken possession was entitled to hold possession under it when this action was brought, January 28, 1854. In trover the defendant may show a paramount title in a stranger. (*Schermerhorn* v. *Van Volkenburgh*, 11 *John.* 529.) Especially where he claims title or

Ombony v. Jones.

interest in himself through such stranger. (*Duncan* v. *Spear*, 11 *Wend.* 58.)

VII. The plaintiffs, from the time they instituted their lien proceedings against Barmore, up to the time they attempted to remove the building, treated the building in question as real estate, both by their proceedings of record, and in fact, and they are estopped from now treating it as personalty.

*Ferris & Frost*, for the plaintiffs. I. The conversion of the building by the defendant was fully proved. (*Farrar* v. *Chauffetete*, 5 *Denio*, 527. *Reynolds* v. *Shuler*, 5 *Cowen*, 325. 4 *Ad. & Ellis*, 884.)

II. The plaintiff's title to the building in question was acquired by virtue of a sale under a judgment rendered in the supreme court in proceedings to establish and enforce a lien, pursuant to the provisions of the mechanics' lien law, (*Laws of* 1852, *p.* 611,) and according to the view which the plaintiffs take of this case, it is unnecessary to inquire whether the lien law in question applies to buildings which are personal property; for the general judgment was rendered in these proceedings, and the title of Barmore in this building was levied upon by virtue of an execution issued upon such judgment, while Barmore held possession of the same, and before the defendant had acquired any interest therein. (*Freeman* v. *Cram*, 3 *Comst.* 308, 9.)

III. The words in the lease to Winant, "with all the privileges belonging thereto, as enjoyed by S. Hall," cannot be so construed as to bind Winant by all the covenants contained in lease to Hall, but obviously refers to the extent of the premises to be occupied and privileges to be enjoyed.

IV. Even if the lease to Winant had contained the very covenant found in the lease to Hall, still Barmore would have had the right to remove the building in question, in case it was a chattel, and not a part of the freehold. (*Naylor* v. *Collinge*, 1 *Taunt.* 19. *Dean* v. *Allalay*, 3 *Esp.* 11. *Woodf. Land. and Tenant*, 282, 283.)

V. The building in question having been levied upon and taken in possession by the sheriff, under execution, July 1st, 1853,

and while Barmore still remained in possession of the building, the plaintiffs acquired all the interest of Barmore in the building in question, and could not be affected by any of the conveyances or releases made by Barmore or Winant, all of which bear date subsequent to that time. (*Lemar* v. *Miles*, 3 *Watts*, 332. 2 *Smith's Leading Cas.* 170. *Doty* v. *Graham*, 5 *Pick.* 489.)

VI. In answer to the objection that the building in question was so attached to the freehold that it was not removable, the plaintiffs submit, (1.) That no question of this kind was raised at the trial, either by a motion for nonsuit, or by exception to the charge of the court. (2.) The whole case was submitted to the jury without any request to charge upon any particular point, and the defendant is therefore concluded by the verdict. (*Hunter* v. *Osterhoudt*, 11 *Barb.* 35.) (3.) If the question was properly before this court as to whether the building was removable, it is well settled that it was so removable. (*Holmes* v. *Tremper*, 20 *John.* 28. *Vanderpoel* v. *Allen*, 10 *Barb.* 164. *Winslow* v. *Merch. Ins. Co.*, 4 *Metc.* 310, 11. *Wiltshire* v. *Cottrel*, 18 *Eng. L. and Eq. Rep.* 142. *King* v. *Dately*, 1 *Ad. & Ellis*, 884. *Dubois* v. *Kelly*, 10 *Barb.* 496.) And it makes no difference that the ground was dug up to erect the building. (*Dubois* v. *Kelly*, *supra*.)

VII. The chattel mortgage offered in evidence does not affect the plaintiff's right to recover. (1.) The defendant does not, by his answer, claim title to the building in question as a chattel, through Winant, but on the contrary, expressly alleges throughout, that it was part of the realty, and as such he was entitled to it. (2.) The surrender of the lease by Winant to the defendant does not purport to convey the building in question. (3.) No claim of title to the building was made on the trial, through or under this mortgage, and the plaintiffs were not bound to contest its validity.

*By the Court*, S. B. STRONG, J. The plaintiffs, in order to enforce or bring to a close their alleged lien, for materials furnished in constructing a building for one Ward Barmore, served a notice personally on him, requiring him to appear in this court,

to be held in the county of Westchester, where the building was situated, and to submit to an accounting and settlement for such materials.   Barmore made default, and a judgment was eventually obtained against him, under which an execution was issued, and the building was sold to Ingersoll & Clapp, who transferred it to the plaintiffs.   The defendant was, and is, the owner of the land upon which the building in question was erected, and now stands.   He claims that the building was his absolute property, and he contends that if it was not, the proceedings to enforce the alleged lien were not warranted by the statute of April 16, 1852, which was then in force.

One objection urged against those proceedings is that the specification required by the 2d section of the act was not served upon Barmore within the requisite period of twenty days after the materials had been furnished.   That may have been a satisfactory defense for Barmore, if he had thought proper to interpose it, but he did not; and in the absence of any objection from him it may be inferred that he either had none, or intended, if he had any, to waive it.   This court had jurisdiction of the proceedings, and the requisite process had been served upon him personally; and if there was subsequently any irregularity, or any defect in the evidence adduced by the plaintiffs, he was concluded by the judgment.   And whether he was or not, no other person could object to it so far as it related to his interests, or the rights of those claiming under or through him.

It was also objected that supposing that Barmore had a right to remove the house when his right to occupy the land upon which it was erected had ceased, still, and especially as he was not the proprietor of such land, he was not such an owner as is designated in the first section of the lien law, and against whom proceedings under it could be maintained.   The first part of that section speaks of a contract with the owner of the building, and it subsequently says that the lien shall be upon such building, and upon the lot of land on which the same shall stand, to the extent of the existing interest of the owner of such building. The qualification shows that the act did not require that the defendant in the proceedings under it should necessarily be the

Ombony *v.* Jones.

absolute owner of the soil. If he might be considered as the general owner of the building that would be sufficient. The lien extended to his interest in the building, and in the land if he had any.

The principal question in this case is whether Barmore was, to the extent required by the statute, the owner of the building erected by him on the defendant's land. He had constructed it upon land occupied by him as a sub-tenant, with the assent of the landlord, at his own expense, for his own use, and with the declared intent (under the circumstances) of removing it when his residence upon the land should terminate ; the foundation was to some extent imbedded in the earth, but the building was not in any manner fastened to it, nor to the main building ; and it could be removed without doing any damage to the soil, or to the other erections upon it. The kitchen had been removed, and in doing this some violence had been perpetrated upon the dwelling house. But that was with the knowledge, and I think it may be fairly inferred with the assent, of the owner, and was by no means prejudicial to him. Under these circumstances it seems to me that pursuant to the liberal and just principles which have latterly prevailed, the building was the property of the tenant, with the right to remove it away when his residence upon the land should terminate : unless indeed there was some express provision in the lease under which he assigned his right of occupancy which prevented or qualified it. The defendant contends that there was a reference in the lease to a provision in a prior lease by him to Hall, which prevented the acquisition of any title to the building in question by the under-tenant who constructed it. In the lease to Hall there is a covenant by the lessee to leave on the premises at the end of his term all trees, shrubbery, buildings, fences, and all other additions and improvements that might be put there by the lessee. In the lease to Winant under which Barmore occupied, the lessor agreed to lease and rent the demised premises with all the *privileges* belonging thereto as enjoyed by Hall. The reference to the lease to Hall was for the purpose of defining the *privileges* intended to be conferred by the new lease. That is conformable to the

grammatical rule, and I think corresponds with the intention of the parties, as the word "enjoyed" is peculiarly applicable to privileges, and not at all so to the performance of covenants by the person upon whom they are conferred. I think that there is nothing in the lease to Winant which at all interfered with Barmore's right to the building in question.

I have said that no person other than Barmore could raise the objection that the specification required by the statute had not been served in season, so far as it related to his interests or the rights of those claiming through or under him. In that I did not intend to include any rights of third persons acquired before the suit. Of course a judgment in a suit to which such persons were not parties could not affect their interests previously vested. The mortgage to Winant was given before the proceedings to enforce the lien had been instituted, and after the time for serving the specification had elapsed, and therefore if such specification had not been seasonably served, the lien of the mortgagee was at least superior to that of the material man. It was not proved, however, that the defendant had any interest in the mortgage, and it is no defense to an action by the proprietor of personal property to recover its value from a wrongful possessor, that it has been mortgaged to some other person with whom he has no connection.

The judgment should be affirmed.

[Dutchess General Term, April 8, 1856. *Brown, S. B. Strong* and *Rock-well,* Justices.]